**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

|                                                    |   |                     |
|----------------------------------------------------|---|---------------------|
|                                                    | : |                     |
| WILLIAM SCHROEDER,                                 | : |                     |
|      Plaintiff,                                    | : |                     |
|                                                    | : |                     |
|      v.                                            | : |                     |
|                                                    | : | No. 2:02-CV-299     |
| MAKITA CORPORATION f/k/a                           | : |                     |
| MAKITA ELECTRIC WORKS, LTD.,                       | : |                     |
| and MAKITA USA, INC.,                              | : |                     |
|      Defendants.                                   | : |                     |
|                                                    | : |                     |

<u>**OPINION AND ORDER**</u>

In this diversity action, the Plaintiff, William Schroeder,
seeks recovery on theories of negligence and strict liability
based on injuries he sustained while using a Makita circular saw.
Defendants Makita Corporation and Makita USA, Inc. (collectively
"Makita") move to strike Schroeder's "Statement of Undisputed
Facts" and the supplemental affidavit of Schroeder's proposed
expert witness, Lewis Barbe.  Makita also moves to exclude
Barbe's testimony and for summary judgment.  For the reasons
stated below, the motion to strike Schroeder's statement of
undisputed facts (Doc. 71) is GRANTED.  The motion to strike
Barbe's supplemental affidavit (Doc. 73) is DENIED, although
Makita will be afforded another opportunity to depose Barbe.  The
motion to exclude Barbe's testimony (Doc. 59) is GRANTED IN PART
and DENIED IN PART.  The motion for summary judgment (Doc. 58) is
DENIED.

## I. BACKGROUND

The following facts, which are presented in the light most favorable to Schroeder, are undisputed except where otherwise noted.

### A. The November 1999 accident

William Schroeder is a carpenter.  In 1999, he owned a Makita 5007NB hand-held circular saw ("the saw" or "Schroeder's saw") that had been manufactured by Makita in 1986.  Schroeder had owned the saw since 1986 or 1987, and he used it on an almost daily basis, along with another 5007NB saw that he owned.  The saw was bought new for him by a former employer, and he has been its only owner.

The saw has a trigger-type switch incorporated into the handle.  The saw's blade rotates when the switch is depressed.  Ordinarily, when the operator releases the switch, power is cut off, and the blade continues rotating or "coasting down" until it stops.  The particular switch used in Schroeder's saw is known as a "Cutler-Hammer" switch.

On November 29, 1999, Schroeder was constructing a garage for a homeowner in West Wardsboro, Vermont.  He was using the saw to make a plunge cut into a 2" by 4" board.  After he began cutting, he felt the saw blade begin to "bind," or get stuck, in the wood.  He released the trigger switch, but according to Schroeder, the saw continued running under full power.  It then

2

went into a "kickback," a situation that occurs when a saw is propelled forcibly up and away from the cutting surface.  As the saw kicked back, it struck Schroeder's hand, severing two of his fingers.  Two of Schroeder's co-workers were nearby and came to his assistance, but neither witnessed the actual accident.

Schroeder's fingers were subsequently reattached at Dartmouth Hitchcock Medical Center in New Hampshire, but he suffered permanent disfigurement and loss of function.  He contends that the saw was defective and that this defect was the cause of his injury.

**B.** **Proposed expert witness Barbe**

Schroeder initially retained H. Boulter Kelsey as an expert witness to testify that the saw was defective.  Makita moved to exclude Mr. Kelsey's testimony on the ground that his opinions failed to satisfy the reliability standard of Fed. R. Evid. 702. Makita also moved for summary judgment, arguing, inter alia, that Schroeder's case was not viable without expert testimony. Unfortunately, Mr. Kelsey died on August 23, 2004.  The Court denied the motion for summary judgment and granted Schroeder time to retain a new expert witness.

Schroeder has now retained Lewis Barbe to testify on the question of whether the saw was defective.  Barbe is a safety engineer with several decades of experience.  See generally Curriculum Vitae of Lewis Barbe, Ex. 1A to Pl.'s Opp. to Mot. to

3

Excl. (Doc. 66).  The field of safety engineering involves the identification, analysis, and remediation of product hazards. Barbe has a Bachelor of Science in fire protection and safety engineering from the Illinois Institute of Technology.  He is a registered professional safety engineer in Massachusetts and California, and he is a registered products safety engineer with the Board of Product Safety Management.

Barbe worked as a safety engineer for approximately 16 years at Westinghouse Electric, Standard Railway Co., American Hoist and Derrick, and other private companies, where he carried out loss control and risk management programs and conducted product safety analysis.  In 1972, he established his own consulting business, in which he consulted with manufacturers, trade associations, and governments regarding product defects and hazards.  He is currently on several committees of the American National Standards Institute and the American Society of Testing Materials, and he is a delegate to an International Electrotechnical Commission subcommittee for electrical equipment safety standards.  Barbe also has experience over several decades consulting in litigation matters and testifying as an expert witness.  See, e.g., Kuisis v. Baldwin-Lima-Hamilton Corp., 319 A.2d 914, 924 (Pa. 1974) (holding that Barbe was qualified to testify in a crane accident case and that exclusion of his testimony had been an abuse of discretion).

4

Barbe's background includes experience in machine and power tool safety.  He has consulted as an expert in circular saw cases.  He has also performed safety consulting on numerous saws, including circular saws, and he has specialized in evaluating saws for the Fraternal Order of Foresters.

In preparing for his testimony in this case, Barbe examined Schroeder's saw as well as two other Makita 5007NB saws.  He also examined disassembled switches from Schroeder's saw and from one other saw.  He reviewed depositions from Schroeder and other individuals involved in this case, as well as manuals, regulations and standards, design plans of the saw and its switch, and various other documents.  He also reviewed reports, depositions, and videotapes made by different experts in preparation for this case and other cases involving 5007NB saws. Among the materials on which Barbe relied were a videotape of a joint disassembly of Schroeder's saw by Kelsey and by Makita's expert, Jack Hyde.  Barbe did not personally perform testing on the saw, but he evaluated results of tests performed by Kelsey and Hyde, including a test to measure the time it took for the blade to spin down when the power was switched off.  He also viewed a videotape of a test done by another consultant, Smith Reed, in which Reed duplicated the failure of the switch on Schroeder's saw.  Barbe has done his own testing on other circular saws, including testing to simulate a bind condition.

Based on his experience as a safety engineer and his review of the materials in this case, Barbe has concluded that Schroeder's injury was caused by a defect in the saw's switch that caused power to continue flowing to the saw even after Schroeder released the trigger.  See Report of Lewis Barbe at 15 ("Barbe Report"), Ex. 1B to Doc. 66.  He believes that this failure was a result of contaminating material, such as fine sawdust particles, inside the switch, and welding of electrical contacts within the switch.

Barbe's opinion is that the saw's defect caused Schroeder's injury.  He notes that even a properly operating saw will continue spinning after the power is turned off.  However, he states that his testing has revealed that a kickback will generally not occur in such a situation.  In the event that a kickback does occur when the power is off, Barbe believes that it will be at low power and hence easier to control.  See Aff. of Lewis Barbe, ¶ 28 ("Barbe Aff."), Ex. 1 to Doc. 66.

Barbe opines that Makita could have used an alternative switch design, known as the "Satori" switch, that would have reduced or eliminated the risk of switch failure.  The Satori switch has replaced the Cutler-Hammer switch in current models of the 5007NB, although the Cutler-Hammer switch is still used in certain other Makita power tools.  According to Barbe, the Satori switch incorporates redundancy, uses a different contact design,

and contains a stronger spring mechanism, all of which mitigate the risk of switch failure posed by contamination and welding.

Barbe also notes in his report that the body of the switch on Schroeder's saw was cracked.  He expresses the opinion that the crack was caused by a manufacturing defect due to the use of improper material.  He concludes, however, that the close fit of the cracked surfaces would have prevented significant material from entering the switch.

## DISCUSSION

## II. MAKITA'S MOTIONS TO STRIKE

Makita has moved to strike Schroeder's "Statement of Undisputed Facts" and the supplemental affidavit of Schroeder's proposed expert, Mr. Barbe.

## A. Schroeder's statement of undisputed facts

Under this Court's Local Rules of Procedure, a motion for summary judgment must be accompanied by a short and concise statement of undisputed material facts.  Local Rule 7.1(c)(1). An opposition to a motion for summary judgment must include a short and concise statement of *disputed* material facts.  Local Rule 7.1(c)(2).  Pursuant to these rules, Makita filed a statement of undisputed facts (Doc. 60), and Schroeder filed an "Objection/Response" to Makita's statement (Doc. 68), in which he took issue with many of Makita's purported facts.  Schroeder then filed his own "Statement of Undisputed Facts" (Doc. 69), setting

forth a list of facts and inviting a response from Makita. Makita now moves to strike the latter document, arguing that the Local Rules do not provide an opportunity for the nonmoving party to file a statement of *undisputed* facts at the summary judgment stage.

The Court grants Makita's motion.  Local Rule 7.1(c)(2) afforded Schroeder the opportunity to bring relevant disputed factual matters to the Court's attention, and he took full advantage of this opportunity by filing a 33-page response to Makita's statement of undisputed facts.  The Local Rules make no provision for the second document filed by Schroeder. Furthermore, because a party's ability to withstand summary judgment depends on the existence of disputed facts, not undisputed ones, there is no need for Schroeder to establish undisputed facts at this stage of the litigation.  Accordingly, the Court will strike Schroeder's "Statement of Undisputed Facts," and Makita is under no obligation to respond to it.  The Court will not consider the document in its disposition of the remaining motions.

**B. <u>Barbe's supplemental affidavit</u>**

Following the death of Mr. Kelsey, the Court granted Schroeder's motion to substitute a new liability expert on September 27, 2004.  The Joint Discovery Schedule, entered by the Court on October 20, 2004, required Schroeder to disclose his new expert by January 15, 2005.  The subsequent Discovery

Schedule/Order of May 11, 2005, required Makita to conduct expert witness depositions by June 15, 2005.  In compliance with these deadlines, Schroeder produced the report of Mr. Barbe, and Makita deposed him on May 10, 2005.  Makita subsequently moved to exclude Barbe's testimony and for summary judgment.

On October 13, 2005, Schroeder served Makita with a supplemental affidavit from Mr. Barbe.  The one-page affidavit reports that an outside firm conducted a metallurgical analysis of the Satori switch, and that the analysis determined that the switch used a silver semi-refractory containing silver and cadmium oxide.  Schroeder contends that the supplemental affidavit merely expands on Barbe's deposition testimony and confirms the contents of his initial affidavit.  At his deposition, Barbe stated that the material was silver or a silver oxide.  Tr. of Dep. of Lewis Barbe at 174 ("Barbe Dep."), Ex. 7 to Doc. 66.  Makita, however, has moved to strike the supplemental affidavit, arguing that all relevant discovery deadlines have passed and that it would be unfair to permit Barbe to supplement his prior disclosures in this manner.

Fed. R. Civ. P. 26(a)(2) requires a party seeking to present expert testimony to disclose the opinions to be expressed by the expert and the bases therefor.  Once a party has complied with this requirement, however, nothing in Rule 26 limits that party's ability to provide additional affidavits or disclosure as to the expert's opinions.  In addition, Fed. R. Civ. P. 56(c)

specifically contemplates that a party defending against a motion for summary judgment may present affidavits on its behalf.

In Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996), the Second Circuit discussed the circumstances in which an affidavit that supplements prior deposition testimony may be considered at the summary judgment stage:

> Although a party does not show a triable issue of fact merely by submitting an affidavit that disputes his own prior sworn testimony, a material issue of fact may be revealed by his subsequent sworn testimony that amplifies or explains, but does not merely contradict, his prior testimony, especially where the party was not previously asked sufficiently precise questions to elicit the amplification or explanation.

Because the supplemental affidavit is an amplification, not a contradiction, of Barbe's prior testimony, there is no basis for exclusion.

Makita argues that the supplemental affidavit violates the May 11, 2005 Discovery Schedule/Order, and it cites numerous cases authorizing sanctions for violations of discovery orders. The cited cases, however, involved parties who failed to provide required disclosure within the deadlines set by the Court.  Where a party has complied with all relevant deadlines and merely seeks to make additional disclosure, there is no violation of a discovery order unless the order expressly prohibits additional filings.  In this case, Makita has not drawn the Court's attention to anything in the relevant discovery orders that would prohibit Schroeder from making additional disclosure or

10

amplification of Barbe's testimony.  Accordingly, Makita's motion to strike Barbe's supplemental affidavit will be denied.

The Court notes, however, that because Schroeder has supplemented Barbe's testimony since his deposition, fairness requires that Makita be afforded an opportunity to depose him again regarding the supplementation.  For this reason, the Court hereby modifies the existing discovery schedule to permit Makita, if it desires, to conduct an additional deposition of Barbe within 30 days of the issuance of this opinion and order.

### III. <u>MAKITA'S MOTIONS TO EXCLUDE TESTIMONY OF WITNESS BARBE AND FOR SUMMARY JUDGMENT</u>

Because Makita's motions to exclude Barbe's testimony and for summary judgment raise closely related issues, the Court will address those issues together.

### A. <u>Legal standard for summary judgment</u>

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).  A court may not grant summary judgment if a disputed fact exists that might affect the outcome of the suit under controlling substantive law.  <u>Id.</u> at 248.  The burden is on the moving party to demonstrate the absence of a genuine issue of material fact,

11

and in considering the motion, the court must resolve all
ambiguities and draw all inferences in favor of the nonmoving
party. Braham v. Clancy, 425 F.3d 177, 181 (2d Cir. 2005). The
nonmoving party "may not rest upon the mere allegations or
denials of the adverse party's pleading," but must "set forth
specific facts showing that there is a genuine issue for trial."
Fed. R. Civ. P. 56(e).

## B. **Whether Schroeder has established issues of material fact as to defective design and proximate cause**

To prevail on his claim of strict liability, Schroeder must
establish, inter alia, that the saw was defective and that its
defective design was a proximate cause of Schroeder's injury.
Farnham v. Bombardier, Inc., 161 Vt. 619, 620, 640 A.2d 47, 48
(1994). Proximate cause is also an essential element of
Schroeder's negligence claim. Keegan v. Lemieux Security Servs.,
Inc., 177 Vt. 575, 576, 861 A.2d 1135, 1137 (2004).

Makita argues that Schroeder has failed to demonstrate
issues of material fact with regard to defectiveness and
proximate cause. Schroeder relies primarily on Barbe's opinion
testimony to establish both of these elements. Makita argues,
however, that Barbe's testimony must be excluded because it fails
to meet the reliability standard of Fed. R. Evid. 702 and Daubert
v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

1. The Rule 702/*Daubert* standard

Fed. R. Evid. 702 provides:

> If scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence
> or to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion
> or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product
> of reliable principles and methods, and (3) the witness
> has applied the principles and methods reliably to the
> facts of the case.

Rule 702 incorporates the modern standard, as defined by

Daubert, for determining the admissibility of scientific and

technical evidence at trial.  Rejecting the prior rule that novel

scientific evidence was admissible only if it was based on a

method or theory that had gained general acceptance within the

field, the Daubert Court emphasized the liberal thrust of the

Federal Rules of Evidence and the trend toward relaxing opinion

testimony requirements.  Daubert, 509 U.S. at 588; see also

Blanchard v. Eli Lilly & Co., 207 F. Supp. 2d 308, 316 (D. Vt.

2002).  The Court noted the liberal relevance standard set forth

in Fed. R. Evid. 401 and 402 and emphasized that the inquiry into

scientific validity is a flexible one.  Blanchard, 207 F. Supp.

2d at 315 (citing Daubert, 509 U.S. at 594).

Rule 702's requirement that expert testimony assist the

trier of fact serves to ensure its relevance, or "fit."  Adel v.

Greensprings of Vt., Inc., 363 F. Supp. 2d 683, 686 (D. Vt. 2005)

(citing Daubert, 509 U.S. at 591).  Rule 702 also requires that

expert testimony be the product of "reliable principles and

methods."  Fed. R. Evid. 702.  This Court analyzes the issue of

reliability according to the analysis in <u>Blanchard v. Eli Lilly</u>.
As that decision emphasized, the "trial judge enjoys 'broad
latitude when it decides how to determine reliability.'"
<u>Blanchard</u>, 207 F. Supp. 2d at 316 (citing <u>Daubert</u>, 509 U.S. at
142).

The <u>Daubert</u> Court set forth four factors relevant to a
court's reliability determination: (1) the degree to which the
theory or technique can be or has been tested; (2) the degree to
which it has been subjected to peer review and publication; (3)
as to a scientific technique, the known or potential rate of
error, and the existence of standards governing its application;
and (4) widespread acceptance. <u>Daubert</u>, 509 U.S. at 593-94.
However, this list was not intended as an exhaustive summary of
all relevant factors. <u>See</u> <u>Daubert</u>, 509 U.S. at 593 (stating that
"[m]any factors will bear on the inquiry, and we do not presume
to set out a definitive checklist or test"); <u>Blanchard</u>, 207 F.
Supp. 2d at 315-16. Moreover, the list of factors found in
<u>Daubert</u> was developed for novel scientific evidence. <u>Adel</u>, 363
F. Supp. 2d at 686. Thus, other factors may be more relevant
when courts consider more mainstream methods, <u>id.</u>, or in cases
involving technical as opposed to scientific evidence.

Courts applying <u>Daubert</u> have found other factors pertinent
and have recognized that the <u>Daubert</u> factors do not apply to all
types of expert testimony. <u>Id.</u> Other factors courts have used
in determining the reliability of expert testimony are: (1)

14

whether the expert's field itself lacks reliability, <u>Kumho Tire</u> <u>Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 151 (1999); (2) whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field," <u>id.</u> at 152; (3) whether the testimony comes from research conducted independent of litigation, <u>Daubert</u> <u>v. Merrell Dow Pharm., Inc.</u>, 43 F.3d 1311, 1317 (9th Cir. 1995); (4) whether the expert has considered possible alternative explanations in his analysis, <u>Ambrosini v. Labarraque</u>, 101 F.3d 129, 140 (D.C. Cir. 1996); and (5) whether the technique is put to non-judicial uses, <u>United States v. Downing</u>, 753 F.2d 1224, 1239 (3d Cir. 1985).  None of these factors is automatically dispositive, and the application of each factor "depends upon the particular circumstances of the particular case at issue[.]" <u>Kumho Tire</u>, 526 U.S. at 150.  The court's inquiry must focus on the methodology used by the expert, and not the conclusions reached.  <u>Adel</u>, 363 F. Supp. 2d at 687 (citing <u>Daubert</u>, 509 U.S. at 595).  Nevertheless, the court is not obligated to accept a conclusion if it does not reliably flow from the facts available and methodologies used.  <u>Id.</u> (citing <u>Amorgianos v. National R.R.</u> <u>Passenger Corp.</u>, 303 F.3d 256, 266 (2d Cir. 2002).

2. <u>Admissibility of Barbe's testimony</u>

As noted above, Barbe has identified two purported defects in Schroeder's saw.  He concludes that the switch housing cracked as a result of a manufacturing defect, although he does not place

15

significant reliance on this fact as a cause of Schroeder's injury.  He also concludes that the switch itself was defective because it failed to cut power to the blade when Schroeder released it, and he takes the view that the Satori switch would have been less likely to suffer from this defect.

Barbe's testimony also forms an important basis for Schroeder's theory of proximate cause.  Barbe concludes that the saw probably would not have kicked back if the switch had worked properly, and that even if a kickback had occurred, it would have been less powerful and easier to control.  Accordingly, he concludes, Schroeder would not have been injured if the switch had not been defective.

Taken together, these conclusions would be sufficient to create an issue of material fact with respect to the presence of a defect and proximate cause.  Makita, however, argues that an analysis of the <u>Daubert</u> factors establishes that Barbe's opinions must be excluded.

The Court agrees with Makita that Barbe's testimony regarding the defectiveness of the switch housing should be excluded.  Barbe places substantial reliance on the work of the late Mr. Kelsey, and he agrees with Kelsey that the crack was too narrow to admit significant particles.  However, Kelsey ultimately concluded that the switch housing was *not* defective. <u>See</u> Suppl. Report of H. Boulter Kelsey at 12, Ex. 4C to Doc. 66. Barbe provides no explanation for his rejection of Kelsey's

16

conclusion, nor does he explain in his report why he believes that the crack was due to a manufacturing defect as opposed to misuse or some other cause. Most fundamentally, Barbe fails to explain how a defect in the switch housing could have contributed to Schroeder's injury if the crack was too small to allow contaminants to enter the switch. In other words, this portion of Barbe's testimony fails to satisfy Daubert's "fit" requirement. For these reasons, the Court will exclude as irrelevant Barbe's testimony regarding the defectiveness of the construction of the switch housing.

Barbe's other conclusions, regarding the defect in the switch itself, the superiority of the Satori design, and the proximate cause issue, require a more detailed application of the Daubert factors. With respect to these conclusions, Makita's arguments focus primarily on the reliability component of Daubert and Rule 702, rather than on the issue of fit.

The first factor is whether the theory has been tested. Although Makita stresses the fact that Barbe did not personally conduct any testing on Schroeder's saw, the proper inquiry is whether testing has been performed, not whether it was performed by the expert himself. See Daubert, 509 U.S. at 593. Experts are permitted, of course, to rely on facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703.

17

With this in mind, the Court notes that Barbe reviewed and relied on test results obtained from other experts, including Mr. Kelsey, Mr. Hyde, and Mr. Reed.  Kelsey performed several tests on Schroeder's saw, including some in conjunction with Hyde. Reed performed a test of Schroeder's saw in which he successfully duplicated the switch failure, and Barbe reviewed a videotape of that test.  In addition, the Satori switch, which Barbe holds to be a superior model, has been subjected to extensive laboratory and real-world testing, and all of the available evidence suggests that it has performed successfully.

Although Makita dismisses Barbe's conclusions as to proximate cause as "conjecture" and "ipse dixit," Barbe in fact relied on testing and other data in formulating his opinion that the switch failure was the cause of the kickback and resulting accident.  Barbe himself has performed testing on other circular saws in order to simulate a bind situation and to evaluate the probability and severity of kickbacks.  Barbe also notes that he has taken into account the experience of skilled carpenters. Schroeder, for example, has stated that throughout his career as a carpenter, he would always release the switch when he sensed a bind occurring, and that a properly operating saw would always shut off at that point instead of kicking back.  See Tr. of Dep. of William Schroeder, Ex. 11 to Doc. 66.

Because Barbe's conclusions took into account extensive testing by himself and others, the first Daubert factor weighs in

18

favor of admissibility.

Since Barbe's testimony involves technical analysis, not a scientific technique, the other Daubert factors are of limited relevance in this case.  See Adel, 363 F. Supp. 2d at 686.  That having been said, with regard to the fourth factor, the fact that Makita has replaced the 5007NB's Cutler-Hammer switch with the Satori switch and has used the Satori in other products provides at least some evidence of "widespread acceptance" of the superiority of the latter design.

The factors developed by courts in the wake of Daubert are also relevant to the Court's analysis of Barbe's testimony. There is no indication that Barbe's field lacks reliability; to the contrary, his participation on committees of several nationally and internationally recognized organizations suggests that Barbe's field, as well as Barbe himself, is viewed with respect.

Another factor is whether Barbe displays the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.  Although the parties do not directly address this factor, Makita raises some concerns that bear on the level of rigor found in Barbe's work.  Makita notes that in preparing his conclusions, Barbe cited a large number of patents and standards with limited relevance to the question of the switch's defectiveness.  Provided that Barbe took into account a sufficient body of relevant material, however, the fact that he

collected other, less relevant background information is of relatively little importance.  Barbe's deposition testimony indicates that he did not necessarily intend to rely directly on the background material for his testimony.  See, e.g., Barbe Dep. at 93 (indicating that Barbe reviewed patents to find examples of hazard analyses that are generally performed before products are released); id. at 97 (stating that Barbe examined various standards for "insight into minimum safety requirements" that should be performed in an analysis).  As his report demonstrates, Barbe also placed significant reliance on materials that are clearly relevant, such as the work of the other experts in the case as well as applicable safety standards.  See Barbe Report at 1-3.

Makita also notes that in compiling his report, Barbe copied sections of Hyde's report verbatim while reaching contrary conclusions.  It is true that Barbe's report appears to be closely modeled on Hyde's, and many sections are indeed copied directly.  However, it is equally clear that Barbe conducted his own analysis and that his conclusions are based on that analysis as opposed to being mere denials of Hyde's findings.  See Barbe Aff. ¶ 17 ("In my report I mirrored much of Jack Hyde's report . . . however, I did more than change a few key words, I made significant conclusions and opinions which differ from his.").  While it may well have been preferable for Barbe to use his own language throughout the report, his adoption of noncontroversial

20

portions of Hyde's report does not cast significant doubt on Barbe's intellectual rigor.

An additional factor is whether the expert's testimony comes from research conducted independent of litigation. While some of the testing and work on which Barbe relies was conducted in anticipation of this lawsuit, significant testing was performed jointly by experts for both sides, which would tend to increase its reliability. Barbe also relies on regulations, diagrams, and safety documents that were produced independent of litigation. Barbe's work, including his involvement in issues of saw safety, has also been put to numerous non-judicial uses, as demonstrated by his long history of consulting in matters unrelated to litigation. For these reasons, these factors do not against a finding of reliability.

Finally, one factor considered by courts is whether the expert has considered alternative explanations in his analysis. Barbe has done so in this case. For example, he considered and ruled out the possibility that Schroeder's injuries were caused by his hand placement, as well as the possibility that the switch failed due to replacement of the power cord. Barbe Report at 17. He also took into account the possibility that the saw would have kicked back even if the switch had been operating properly, and he concluded that any such kickback would not have been of the same severity. While Makita's expert, Mr. Hyde, has reached different conclusions with regard to alternative explanations,

21

the fact that Barbe considered these in his analysis weighs in favor of admissibility.

Taking all of the above factors into consideration, and bearing in mind the liberal standard set forth in <u>Daubert</u>, the Court concludes that Barbe's testimony is sufficiently reliable to be admitted, with the exception of the testimony regarding the crack in the switch housing. Barbe is a highly qualified safety engineer who has been permitted to testify as an expert in the past. While Makita has identified certain concerns with the rigor of Barbe's approach, the overall weight of the factors is in favor of admissibility. As noted above, the Court will exclude as irrelevant Barbe's opinion that the crack in the switch housing represented a manufacturing defect. However, Makita is not entitled to exclusion of the remainder of Barbe's testimony.

Because Barbe's testimony about the defective design of the switch and the proximate cause of the accident is admissible, Schroeder has presented sufficient evidence for a jury to find in his favor on the essential elements of his claims. Accordingly, Makita is not entitled to summary judgment.

**C. <u>Whether Schroeder has presented sufficient evidence to justify punitive damages</u>**

Makita argues that Schroeder has not presented any facts that would support the imposition of punitive damages in this case. In Vermont, "[p]unitive damages are permitted upon

22

evidence of malice, where the defendant's wrongdoing has been intentional and deliberate, and has the character of outrage frequently associated with crime." Bolsta v. Johnson, 176 Vt. 602, 602, 848 A.2d 306, 308 (2004). To establish malice, the plaintiff must demonstrate "bad motive" on the defendant's part, as opposed to mere negligence or even recklessness. Id.

Schroeder puts forward no direct evidence that Makita acted with malice. He argues that punitive damages are appropriate, however, because Makita was aware that switches on its circular saws had failed in the past and failed to take any action to protect users. He notes that there have been at least six cases in which individuals sued Makita alleging that they had been injured by circular saw switch failures. Makita's failure to recall or replace the switches, Schroeder argues, is evidence of reckless and wanton disregard of consumer safety.

Makita attempts to minimize the importance of the six cases by pointing out that it has sold over 1,700,000 tools containing the Cutler-Hammer switch. Other jurisdictions, however, have permitted the imposition of punitive damages based on a corporation's awareness of a small number of past similar incidents. See, e.g., Smith v. Ingersoll-Rand Co., 214 F.3d 1235, 1249-50 (10th Cir. 2000) (holding that six prior incidents involving alleged defects in defendant's machine were properly admitted to establish defendant's culpability for punitive damages).

23

Viewing the evidence in the light most favorable to Schroeder, the Court cannot at this stage rule out the possibility that Schroeder will be able to establish punitive damages.  The similar incidents raise an issue of material fact, if only barely, as to whether Makita acted with malice.  Whether Schroeder ultimately prevails on this issue will depend on the precise facts that are elicited at trial about the details of the cases and Makita's knowledge of them.

For these reasons, Makita is not entitled to summary judgment on the issue of punitive damages.

## CONCLUSION

For the reasons stated above, Makita's motion to strike Schroeder's Statement of Undisputed Facts is GRANTED.  Makita's motion to strike Lewis Barbe's supplemental affidavit is DENIED; however, the discovery schedule is modified to permit Makita to conduct an additional deposition of Barbe within 30 days of the issuance of this opinion and order.  Makita's motion to exclude Barbe's testimony is GRANTED as to Barbe's conclusions that the saw's switch housing was defective; it is DENIED with respect to the remainder of Barbe's testimony.  Makita's motion for summary judgment is DENIED.

Dated at Burlington, Vermont this 13th day of February, 2006.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge

24